FILED
2009 Dec-01 PM 05:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MARY SHEFFIELD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:08-CV-1676-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff, Mary Sheffield ("Ms. Sheffield"), brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Ms. Sheffield timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, the case is ripe for review under 205(g) of

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI).  However, separate, parallel statues and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

the Social Security Act (the "Act"),  42 U.S.C. § 405(g).[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Sheffield was a 55-year old female at the time of her hearing before the Administrative Law Judge (hereinafter "ALJ").  (Tr. 56).  She has a ninth grade education.  (Tr. 46).  Her past work experiences include home attendant, garment sorter, and companion. (Tr .56).  Her last period of work ended in August 2006. (Tr. 11).  Ms. Sheffield claims she became disabled on August 1, 2006,[3] due to morbid obesity, hypertension (controlled), left ventricular hypertrophy, congestive heart failure (controlled), and hyperlipidemia.  (Tr. 11).

Ms. Sheffield filed her application for a period of disability and DIB on January 16, 2007. (Tr. 9).  She also filed a Title XVI application for SSI on January 16, 2007. *Id*.  The claim was denied by the Commissioner on March 29, 2007. *Id*.

Ms. Sheffield  filed a timely written request for a hearing on April 4, 2007.  (Tr. 9).  The video hearing was held on September 27, 2007.  (Tr. 9).  The ALJ issued an unfavorable decision with regard to Ms. Sheffield's claim on December 18, 2007. (Tr. 6-8, 16).  On July 11, 2008, the Appeals Council denied review effectively

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3]Ms. Sheffield initially alleged an onset date of February 1, 2005, which was later amended to August 1, 2006.

affirming the ALJ's decision and making it the Commissioner's final decision. (Tr. 1-3). The court has carefully considered the record and reverses the decision of the ALJ for further development and consideration.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

Regulations promulgated thereunder.[4]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
    (4)    whether the claimant can perform her past work; and
    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 12, 2009.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Sheffield met the insured status requirements of the Social Security Act through December 31, 2007. (Tr. 11). He also ruled that Ms. Sheffield has not engaged in substantial gainful activity since the alleged onset date of her disability on August 1, 2006. (*Id.*). The ALJ then decided the claimant has a severe combination of impairments including: morbid obesity, hypertension (controlled), left ventricular hypertrophy, congestive heart failure (controlled), and hyperlipidemia. (Tr. 11). The ALJ determined that Ms. Sheffield does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, of the Social

Security Regulations. (Tr. 12).

The ALJ concluded that Ms. Sheffield has the residual functioning capacity to perform a limited range of light work due to obesity, hypertension, and her history of congestive heart failure. Specifically, the ALJ determined that Ms. Sheffield is restricted from climbing ladders, ropes and scaffolding. (Tr. 12). She is also restricted from working at unprotected heights, around dangerous machinery, and working in temperature extremes and humidity. (Tr. 12). The ALJ found that Ms. Sheffield is capable of performing past relevant work as a companion and a garment sorter. (Tr. 15). The vocational expert ("VE") testified that Ms. Sheffield's past work experiences as a companion and garment sorter are characterized by the Dictionary of Occupational Titles[5] as "light exertional work." (Tr. 16, 56).

The ALJ finally held that Ms. Sheffield has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision and therefore was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act. (Tr. 21, 22). Further, based on her application for SSI, the ALJ similarly found that Ms. Sheffield was not disabled under §

---

[5]The Dictionary of Occupational Titles provides different examples of work activities that fall within the residual functioning capacity for light work. (Washington, D.C.: U.S. Dept. Of Labor, Employment and Training Administration: U.S. G.P.O., 1993). Available online at: http://www.occupationalinfo.org.

1614(a)(3)(A) of the Social Security Act.  (Tr. 16).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]  Ms. Sheffield asserts that "the ALJ improperly discounted Ms. Sheffield's testimony of pain and failed to fully and fairly develop the record." (Doc. 10 at 11).  Ms. Sheffield also more generally, but relatedly maintains that, "[t]he position . . . taken by . . . the Commissioner of Social Security was not substantially justified." (*Id*.).

In its review, this court agrees with Ms. Sheffield that the ALJ did not fully and fairly develop the record, including in particular his incongruous treatment of certain medical evidence.  Therefore, the decision by the Commissioner is to be reversed and remanded for further development and consideration.[7]

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7] Accordingly, this court does not reach the evaluation of the ALJ's application of the Eleventh Circuit pain standard.

**I.   THE ALJ COMMITTED ERROR IN HIS TREATMENT OF DR. LARY'S OPINION DESPITE ASSIGNING HIS OPINION WITH SIGNIFICANT WEIGHT**

**A.   The ALJ's Dismissal of Dr. Lary's Findings Related to Obesity**

In his decision, the ALJ stated that significant weight was given to the March 26, 2007, findings and opinion[8] of the consultative physician, Dr. Lary. (Tr. 15). Ms. Sheffield argues that the ALJ erred in giving significant weight to Dr. Lary.[9] (Doc. 10 at 9). Despite how the parties have worded their particular arguments, the larger issue for this court to address on appeal is whether the stated weight purportedly afforded to Dr. Lary's findings and opinion is reconcilable with the ALJ's overall decision.

Consistent with giving significant weight to Dr. Lary's findings and opinion, the ALJ listed in his disability determination all of Dr. Lary's objective findings included in his report. (Tr. 14-15). More specifically, the ALJ indicated, "Doctor Lary found that the claimant's limitations included a reduced exercise capacity due to her heart disease. He also found limitations resulting from her obesity." (Tr. 14).

The ALJ then addressed Ms. Sheffield's ability to lift. The ALJ's treatment of

---

[8]When referring to Dr. Lary's findings and opinion, the findings are the history and physical assessment findings reported by Dr. Lary; the opinion is the discussion portion of his examination.

[9]Specifically, Ms. Sheffield has complained about Dr. Lary's only citing to one of her medical records. (Doc. 10 at 9).

Dr. Lary's findings, specifically with respect to the claimant's limitations as to lifting, is internally inconsistent with his determination. More particularly, the ALJ stated, "There is no evidence that the claimant has a reduced ability to lift objects due to anything *other than her obesity* . . ." (Tr. 15) (emphasis added). This statement in the ALJ's decision implies that, because Ms. Sheffield's reduced ability to lift is caused by her obesity (which the ALJ found to be one of her severe impairments), and not by any of her other impairments, it is free to be disregarded by the ALJ, despite the ALJ's indication that he gave significant weight to Dr. Lary's opinion.

Put differently, if Dr. Lary had found that Ms. Sheffield's reduced ability to lift was caused by her heart disease, or some other non-obesity factor, then such work-related limitation would have apparently been considered, as opposed to disregarded, by the ALJ. Assigning Dr. Lary's findings and opinion significant weight while simultaneously and arbitrarily (*i.e.*, without any explanation) throwing out Dr. Lary's opinion regarding Ms. Sheffield's lifting limitations caused by her obesity, renders the ALJ's decision internally inconsistent. Moreover, the ALJ's ambiguous treatment of Dr. Lary's opinion constitutes reversible error.

> **B.     The ALJ's Application of Weight Afforded to Only Certain Parts of Dr. Lary's Evaluation**

The ALJ must take into account and evaluate the record as a whole. *Roberson*

9

*v. Astrue*, No. 3:07-cv-01541-VEH, (Doc. 10 at 8) (N.D. Ala. June 11, 2008) (citing *McCruter v. Bowens,* 791 F.2d 1544, 1548 (11th Cir. 1986)).  It is not enough to discover a piece of evidence which supports the decision, but to disregard other contrary evidence.  *Id*.  The ALJ's opinion is materially deficient in this respect.

Dr. Lary stated in his evaluation that Ms. Sheffield's "ability to sit, stand, walk, lift, carry, bend, and squat is *impaired* by her obesity." (Tr. 192) (emphasis added). When specifically discussing Ms. Sheffield's strength, the ALJ clearly only gave substantial weight to the objective physical examination conducted by Dr. Lary and apparently gave no weight to the related opinion of Dr. Lary, which states that Ms. Sheffield is impaired.  In order to fulfill his basic obligation to develop a full and fair record, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision in order to enable a reviewing court to determine whether the ultimate decision" is rationally based on substantial evidence. *Roberson v. Astrue*, No. 3:07-cv-01541-VEH, (Doc. 10 at 11) (N. D. Ala. June 11, 2008) (citing *Coward v. Schwinker*, 662 F.2d 731, 735 (11th Cir. 1981)).  The ALJ wholly failed to explain why he disregarded Dr. Lary's opinion.

On the whole, the court is unclear about the actual weight that the ALJ afforded the findings and opinion of Dr. Lary.  For example, when specifically analyzing how Ms. Sheffield's impairments effect her ability to work, the ALJ disregarded Dr.

Lary's finding about her decreased ability in lifting. Otherwise, the only mention of Dr. Lary's opinion is when it is quoted verbatim, and perhaps it is inserted for no other reason but to "prove" that the ALJ afforded it weight by acknowledging its presence. Furthermore, the ALJ did not explain why he disregarded Dr. Lary's opinion but still accepted parts of his findings during examination. In further developing the record, it may become clear that the opinion of Dr. Lary merits little weight because it does not go into enough detail about the degree of abilities (or lack thereof) that Ms. Sheffield retains with respect to work-related functionality. However, the court cannot draw any such conclusion based on the record before it at this time because the ALJ has failed to offer any explanation for his disjointed treatment of Dr. Lary's findings and opinion despite indicating that he afforded them significant weight.

Relatedly, although the ALJ indicated that he gave significant weight to Dr. Lary's 2007 evaluation, his decision reflects that he only gave significant weight to certain parts of Dr. Lary's examination, that he disregarded other portions (*i.e.*, relating to obesity) without articulating any corresponding reasoning, and that he afforded no weight to Dr. Lary's overall opinion. This court has previously stated that it is troubled by the unsubstantiated rationale of the ALJ in excluding some parts and accepting other parts of findings from the same consultative examination. *See*

11

*Roberson v. Astrue*, No. 3:07-cv-01541-VEH, (Doc. 10 at 10) (N. D. Ala. June 11, 2008).  In *Roberson v. Astrue*, the ALJ chose to accept the GAF score of the consultative physician, but not the medical source statement.  *Id*.  *Roberson* was almost identical to *McCloud v. Barnhart*, which also held that the ALJ was in error, under similar circumstances.  *McCloud,* 166 Fed. Appx. 410 (11th Cir. 2006).[10]

Because the ALJ accepted certain parts of the consultative physician's findings and opinion and disregarded other parts without explanation, he did not fully and fairly develop the record.  The ALJ also did not give the significant weight to all of Dr. Lary's findings and opinion as he claimed he did.  For all these reasons, the Commissioner's decision is due to be reversed.

## **CONCLUSION**

---

[10] In *McCloud*, the Eleventh Circuit reversed and remanded when the ALJ failed completely to consider the GAF score of 48 and was also unclear about the weight he afforded the claimant's GAF of 45.  The Eleventh Circuit held:

> We are unable to determine from the record what weight the ALJ placed on the GAF score of 45; therefore, we reject the Commissioner's argument that any error was harmless.  With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score.  In addition to this error, the ALJ failed to consider McCloud's score of 48 from June 2000, which occurred just day before she filed for SSI benefits, when determining whether she was disabled. On remand, the ALJ must also consider what, if any, weight to accord McCloud's June 2000 GAF score.

166 Fed. Appx. at 418.

Based on the court's evaluation of the evidence in the record and submissions of the parties, this court does not reach the evaluation of the ALJ's application of the Eleventh Circuit pain standard at this time. However, this court does find that the ALJ did not develop a full and fair record; specifically with regard to the opinion of Dr. Lary. The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1066 (11th Cir. 1994). Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision. *Falcon v. Heckler,* 732 F.2d 827, 829-30 (11th Cir. 1984). Accordingly, the decision of the Commissioner is reversed and the case is remanded for further development of the record; specifically, with regard to the opinion of Dr. Lary.

**DONE** and **ORDERED** this the 1st day of December, 2009.

_/s/ VEHopkins_
**VIRGINIA EMERSON HOPKINS**
United States District Judge